D. SHELTON ET AL. v. J. T. H. LAIRD ET AL.

1. TRUST. *Guardian. Use of wards' money. Trustee in invitum, when protected. Case in judgment.*

Shelton sold and conveyed land to Laird. $2000 of the consideration was paid by checks, which were deposited in bank and cashed, and notes were given for the balance. Afterwards he discovered that Laird had drawn the checks as guardian, and had thus misapplied money of minor wards. Without waiting for maturity of the notes, he filed a bill, making Laird, his wards and the sureties on his bond as guardian defendants, prayed for a receiver to collect the rents, that the land be sold to pay the purchase-money, and for a decree protecting the rights of all parties. On demurrer of all the defendants the bill was dismissed. *Held*, error. Complainant was entitled to relief, either by rescission or by a sale to pay the wards' money, in order to protect himself against liability incurred by unwittingly receiving trust funds of the minors. Though the sureties did not object, he was not bound to rely upon their responsibility as a protection against this liability to the minors.

2. SAME. *Notice. Check drawn by guardian. Payee put on inquiry.*

Where one purchasing land in his own name gives the vendor a check adding, "guardian" to his signature, which is paid out of the money of a ward, this is sufficient to put the payee on inquiry, and will charge him as a participant with the guardian in misappropriating the money of his ward, although the payee does not ascertain until after payment that the check was so signed or that the drawer was guardian.

FROM the chancery court of the first district of Hinds county.

HON. H. C. CONN, Chancellor.

Shelton and wife sold and conveyed to Laird and wife, in fee, a house and lot for the sum of $3500. $2000 of the consideration was paid by checks given by Laird. Three notes for $500 each were given for the deferred payments, due respectively at one, two, and three years, and to secure these a vendor's lien was reserved in the deed. When the deed was delivered and the checks received, Shelton deposited them in bank without noticing how they were signed. The first note was paid at maturity, and then it was that Shelton discovered for the first time that the checks which had been given for the cash payment were signed "J. T. H. Laird, guardian." He then also learned for the first time that Laird was guardian for certain minors, and that the checks had been paid out of the funds

in bank to the credit of Laird as such guardian. Without awaiting the maturity of the other two notes, he and his wife at once filed the bill in this case against Laird and wife. They also made the minor wards and the sureties of Laird as guardian, parties defendant.

The above facts were set up, and it was also alleged that complainants feared that Laird and wife would sell the property for their own use and reserve the money, and that the minors would afterwards seek to hold complainants liable as trustees for participating with the guardian in the misappropriation of their money. The bill prayed that Laird and wife, who were in possession, should be enjoined from selling the property ; that a receiver should be appointed to take charge of the same and collect the rents, and that the property should be sold for the purpose of paying the balance of the purchase-money, and in order to reimburse the minors and thus relieve complainants from the liability unconsciously incurred by them in receiving the trust-funds, and for general relief. To this bill a demurrer was filed by all the defendants, including the sureties on the guardian's bond. Among other things, it was set up in the demurrer that the sureties were responsible for this use of the money by the guardian, and that as they did not object, no one else could complain. The demurrer was sustained and the bill dismissed. Complainants appeal.

*D. Shelton,* for appellants, filed a lengthy brief making the following points :—

1. According to the bill the wards of Laird have a trust on the house and lot to the amount of $2000. 32 Miss. 52 ; 43 Ib. 260 ; 48 Ib. 95 ; 62 Ib. 533. This trust results by implication of law. Code 1880, § 1296.

Between complainants and the wards there is no trust, but there may be conflict, for complainants have an expressed vendor's lien, which is superior. The wards have a resulting trust for $2000 on the house and lot, or rather a charge against Laird's equity. 41 Miss. 479 ; 44 Ib. 512 ; 51 Ib. 299.

If complainants are liable to the wards, it is because they received

the $2000 with implied notice of the misapplication of their funds.

2. The bill shows that complainants did not knowingly participate in Laird's breach of trust and did not know even that the trust relation existed. The breach of trust on the part of Laird is manifest. He imposed on complainants, and it is evident that it was done wilfully, with the purpose of placing upon them eventually the consequences of his misapplication of the money. Laird knew the facts but did not inform complainants that the checks were on a fiduciary fund. The object of this bill is to relieve complainants from the possible liability which attached against them by reason of the implied notice given by the manner in which the checks were signed. The prayer is to adjust the rights of the parties now, and not leave a liability to be asserted by the minors, possibly years hence when complainants have passed away, and after Laird shall have sold the house to an innocent purchaser.

3. The relief asked is not against the wards; it is protection for both the wards and complainants, both parties being innocent and likely to suffer by the breach of trust. Complainants seek to compel Laird to pay the $2000 into court, and for a decree protecting their interests and that of the wards. The court has ample power to make a decree protecting the interests of all parties. It is necessary for the protection of complainants against possible liability to the wards to enforce the implied trust of the latter. Complainants ask no decree against the wards, but one that will conserve their interests. Equity has full jurisdiction to protect the rights of all the parties, but especially to protect complainants against the dangers of the future. As to the power of the court we refer to code 1880, §§ 1829, 1834.

4. Complainants' right to relief is not restricted to rescission. In fact, to rescind the contract would be great injustice to them. They have committed no fraud, and have complied fully with all the terms of the agreement.

5. If money, property or negotiable paper be given or transferred in fraud of third parties, the court in protecting the third parties

will do so on equitable principles, imposing primary liabilities on the party guilty of wrong. Byles on Bills, 125, 135; 48 Miss. 498. See also Hill on Trustees, 521, 524. There is a strong analogy between this case and that of *Taylor* v. *Smith*, 54 Miss. 53, and we refer the court specially to that case; also to the case of *Wright* v. *Brown*, 62 Ib. 82. I can see no reason why the court cannot enforce equity between complainants and Laird and wife. If the bill is true, there can be no question where the equity lies; if it is not true, the defendants should answer.

*Nugent & Mc Willie,* for appellees.

It is not claimed that the dealings of the guardian as to the fund in his hand was in any way objectionable. No effort was made at concealment by him when he gave the checks, and it was not supposed that any one could object. The sureties on the guardian's bond do not object to this use of the money; on the contrary, they demurred to the bill and asked the court to dismiss it. They are liable for the return of the money to the wards and for the faithful administration of the trust by the guardian. There is no suggestion of their insolvency, nor of possible loss to result to the minors.

Appellants do not seek a rescission, and offer to restore the *status quo*. While alleging that the sale was fraudulent, they yet ask that the contract shall be enforced. How the complainants can be injured it is hard to conjecture. On their own showing, they received the checks without noticing the manner in which they had been signed, and hence a resulting trust could never be enforced against them in favor of the minors. The security of the vendors for the balance of the purchase-money is certainly paramount to any right the wards may have as against the property. If complainants are really desirous of protecting the interests of the minors, they should ask a rescission and offer to restore the *status quo*. Any other course seems to be a gratuitous attack upon the fair name of the guardian. The only persons who could complain are the sureties on the bond, and they raise no objection. Certainly the property sold is primarily bound for the payment of the

balance going to complainants, and this was not due when the bill was filed. Complainants cannot, *uno flatu,* affirm and disaffirm the contract of sale. We submit that the demurrer was properly sustained.

CAMPBELL, J., delivered the opinion of the court.

The demurrer should be overruled. If Shelton is entitled to any relief whatever, the bill should be maintained. It seems to be conceded by the argument for the appellees that Shelton may be entitled to a rescission of the contract of sale, and, if so, the demurrer was improperly sustained. Certainly, Shelton is entitled to the aid of the court to extricate him from the situation in which he was placed, without his consent or consciousness, by the act of Laird in paying him trust money. The checks signed by Laird, as guardian, were notice sufficient to put Shelton on inquiry, and to charge him as a participant with Laird in the conversion to his own use of the money of the wards, and upon the facts stated in the bill, Shelton, who was made unwittingly to share the responsibility with Laird to his wards for the money thus received, is entitled to be relieved from his perilous position. That Laird has a good bond as guardian, and his sureties consent to his use of the money of the wards in the way stated, is not an answer to the complaint of Shelton, who has been made to incur liability to the wards, and is not content to rely upon the bond as his protection from the dangers of his exposed situation. Shelton's complaint is of a wrong done him, and upon his showing he is entitled to be delivered, either by a rescission of the sale, and a decree for compensation for the injury sustained; or by a decree for a sale of the premises to pay the money of the wards.

We deem it unimportant now to decide the particular form of the relief to which he is entitled.

*We reverse the decree, overrule the demurrer, and remand the case for an answer as of the term at which the demurrer was sustained within thirty days after the mandate herein shall have been filed in the chancery clerk's office.*